**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **In re Lihua International, Inc. Shareholder Derivative Action** |

Case No. 1:14-cv-03543-RA-RLE

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED DERIVATIVE SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND OF THE SHAREHOLDER DERIVATIVE ACTION AND SETTLEMENT NEGOTIATIONS ................................................................. 3

   A.   Factual Background ................................................................................. 3

   B.   Procedural History ................................................................................. 5

      i.   The Shareholder Derivative Action ................................................ 5

      ii.  The Related Securities Class Action ............................................... 7

   C.   Mediation Efforts and Settlement Negotiations ......................................... 8

III.  THE TERMS OF THE PROPOSED SETTLEMENT ....................................... 9

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..... 10

   A.   Legal Standards for Preliminary Approval of the Settlement ................................ 10

   B.   The Settlement Is Fair, Reasonable, and Adequate ................................................. 12

      i.   The Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations ............ 12

      ii.  The Settlement Appropriately Balances the Substantial Benefits Secured for the Company's Shareholders Against the Risks, Costs, and Delays of Continued Litigation ........................................................................................................ 15

V.   THE NOTICE TO LIHUA'S SHAREHOLDERS SATISFIES THE REQUIREMENTS OF F.R.C.P. RULE 23.1(C) AND DUE PROCESS ....................................... 17

VI.  PROPOSED SCHEDULE OF EVENTS ....................................................... 19

VII. CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Arace v. Thompson*,
  2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug. 17, 2011) ................................................... 17, 18

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) .................................................................................................... 3

*Chi Kong Leung v. Home Boy Rest.*,
  2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009) ...................................................... 15

*City of Providence v. Aéropostale, Inc.*,
  2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ......................................................... 12

*Clark v. Ecolab Inc.*,
  2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ....................................................... 14

*Cook v. McCullough*,
  No. 11 C 9119, slip op. (N.D. Ill. Nov. 6, 2013) ................................................................... 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................................... 13

*In re AOL Time Warner S'holder Derivative Litig.*,
  2006 WL 2572114 (S.D.N.Y. Sep. 6, 2006) ........................................................................... 14

*In re Drexel Burnham Lambert Grp. Inc.*,
  995 F.2d 1138 (2d Cir. 1993) ......................................................................................... 18, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................................................... 14

*In re Galena Biopharma, Inc. Sec. Litig.*,
  2016 U.S. Dist. LEXIS 82693 (D. Or. June 24, 2016) ........................................................... 16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .................................................................................................... 10

*In re Lumber Liquidators Holdings*,
  No. 4:13-cv-00157, slip op., (E.D. Va. Nov. 26, 2013) .......................................................... 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................. 12

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................................. 15

*In re PMC-Sierra, Inc. Deriv. Litig.*,
  No. 06 Civ. 05330 (RS), 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010) .................. 18

*In re Telik, Inc. Sec. Litig.*,

576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................... 12

*In re Traffic Executive Ass'n E.R.R.*,
    627 F.2d 631 (2d Cir. 1980)........................................................................... 11

*Klein ex rel. SICOR, Inc. v. Salvi*,
    No. 02 CIV. 1862, 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004) ............................ 18

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ............................................................................ 3

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................ 17

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..................................................... 14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).............................................................. 12

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*,
    447 F.2d 647 (7th Cir. 1971) ........................................................................... 17

*Yong Soon Oh v. AT&T Corp.*,
    225 F.R.D. 142 (D.N.J. 2004).......................................................................... 18

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) .................................................................. 10, 15

## Other Authorities

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002). ............................. 10

Fed. R. Civ. P. 23.1 ......................................................................... 1, 10, 17, 18

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2002). ................................... 11

*Manual for Complex Litigation* (4th ed. 2004) .......................................................... 11

Pursuant to Federal Rule of Civil Procedure 23.1(c), Plaintiffs Sreeram Arshanapally ("Arshanapally") and Eric Morrison ("Morrison," and together with Arshanapally, "Plaintiffs")[1] to the above-captioned consolidated shareholder derivative action (the "Shareholder Derivative Action") filed on behalf of Lihua International, Inc. ("Lihua" or the "Company") respectfully submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of Proposed Derivative Settlement (the "Motion"). The terms of the proposed derivative settlement (the "Settlement") are enumerated in the Stipulation of Settlement dated March 22, 2017 (the "Stipulation"),[2] which is being filed with the Court concurrently herewith.

## I.   **INTRODUCTION**

The Shareholder Derivative Action is brought by Plaintiffs on behalf and for the benefit of nominal defendant Lihua, against the Individual Settling Defendants[3] and Defendants Jianhua Zhu ("Zhu") and Yaying Wang ("Y. Wang")[4] (Zhu and Y. Wang are, together with the Individual Settling Defendants, the "Individual Defendants") for, *inter alia*, breaches of fiduciary duty, unjust enrichment, and breach of contract.

After substantial, hard-fought negotiations at arm's length, with the aid of experienced legal counsel, and with the assistance of two highly respected mediators, Hon. Daniel H. Weinstein (ret.)[5] and Lizbeth Hasse, Esq.[6] (the "Mediators") of JAMS, the Settling Parties reached the

---

[1] As set forth below, on September 7, 2016 the Court granted a motion to substitute Morrison for William Peck ("Peck") as one of the two plaintiffs in the Shareholder Derivative Action. Arshanapally and Peck are also collectively referred to herein as "Plaintiffs."

[2] All capitalized terms herein, unless otherwise stated herein, have the same definitions as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Timothy W. Brown in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Derivative Settlement ("Brown Decl.")

[3] The "Individual Settling Defendants" are Daphne Yan Huang ("Huang"), Robert C. Bruce ("Bruce"), "Kelvin" Siu Ki Lau ("Lau"), Jonathan P. Serbin ("Serbin"), Tianbao Wang ("T. Wang"), and Ming Zhang ("Zhang"). The Individual Settling Defendants together with Plaintiffs and the Company are referred to collectively as the "Settling Parties."

[4] Defendants Zhu and Y. Wang have not been served or appeared in the Shareholder Derivative Action. They are not parties to the Settlement.

[5] Since his retirement from the Superior Court of the State of California, County of San Francisco, Judge Weinstein has been recognized as one of the nation's preeminent mediators of complex civil disputes.

[6] Mediator Hasse has served as mediator, arbitrator, negotiator, or special master since 1998 in over 1,000 matters in the United States as well as internationally.

proposed Settlement to forever resolve all claims in the Shareholder Derivative Action, as set forth in the accompanying Stipulation. The Settlement provides for the payment of $1,200,000 by the Company's insurers into an escrow account of counsel for lead plaintiffs in the consolidated securities class action that has been pending against the Company (the "Securities Class Action"), in order to settle the Securities Class Action.[7] Stipulation, ¶ IV.B.1.

Plaintiffs' Counsel's recommendation that the Court approve the Settlement is based on extensive experience in shareholder representative litigation, and is informed by an extensive independent investigation, rigorous evaluation of the strengths and weaknesses of the claims and defenses weighed against the risks, uncertainty, expense, and delays that would be entailed in attempting to improve the result through continued litigation, including the risks associated with the Lihua's and the Individual Settling Defendants' limited insurance, which was already depleted by the ongoing cost of defending the Shareholder Derivative Action and the Securities Class Action, and which may be limited by the insurers' partial disclaimers of applicable coverage. Stipulation, ¶ II.

Only after negotiating and agreeing to the substantive terms of the Settlement, the Settling Parties, with the assistance of the Mediators, negotiated an appropriated award of attorneys' fees and expenses for Plaintiffs' Counsel.  In recognition of the substantial benefits conferred upon the Lihua's shareholders by the Settlement, and with the recommendation of the Mediators, the Settling Parties agreed to a fee and expense amount of $480,000 (the "Fee and Expense Amount"), which shall include service awards up to $2,000 for each of the Plaintiffs, and which shall be subject to approval by the Court.

---

[7] The Securities Class Action is pending in this Court and is captioned *In re Lihua International, Inc. Securities Litigation*, Case No. 14-cv-05037-RA-RLE (S.D.N.Y. filed May 1, 2014).

For the reasons set forth herein, Plaintiffs respectfully move the Court to enter the parties' proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which: (i) grants preliminary approval of the proposed Settlement on the terms set forth in the Stipulation; (ii) approves, as to form and content, the Notice of Pendency and Proposed Settlement of Shareholder Derivative Action ("Notice") and the Summary Notice of Pendency and Proposed Settlement of Shareholder Derivative Action ("Summary Notice"), attached as Exhibits B and C, respectively, to the Stipulation; and (iii) sets a date for a hearing to consider final approval of the Settlement (the "Settlement Hearing").

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable, and adequate, such that the Notice and Summary Notice of the Settlement should be provided to Current Lihua Stockholders, and the Settlement Hearing should be scheduled.[8] As detailed herein, the Settlement easily meets this standard, and therefore the Court should preliminarily approve the Settlement, order the Notice to be provided to Lihua shareholders in the form and manner proposed below, and set a date for the Settlement Hearing.

Nominal defendant Lihua and the Individual Settling Defendants do not oppose the Motion or any of the requested relief.

## II.   BACKGROUND OF THE SHAREHOLDER DERIVATIVE ACTION AND SETTLEMENT NEGOTIATIONS

### A.   Factual Background

Lihua is a Delaware corporation that is in the business of developing, designing, manufacturing, marketing and distributing low cost, high quality refined copper products through

---

[8] *See, e.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

its two subsidiaries to customers primarily in the People's Republic of China ("PRC" or "China"), the Company's principal place of business.  Lihua's stock was traded on the NASDAQ Exchange until it was delisted on June 17, 2014.  Verified Consolidated Third Amended Complaint ("TAC"), ¶ 22.

Lihua is a Delaware corporation that is in the business of developing, designing, manufacturing, marketing and distributing low cost, high quality refined copper products through its two subsidiaries to customers primarily in the People's Republic of China ("PRC" or "China"), the Company's principal place of business.  Lihua's stock was traded on the NASDAQ Exchange until it was delisted on June 17, 2014.

Plaintiffs' Verified Consolidated Third Amended Complaint ("TAC") alleges, among other things, that the Individual Defendants breached their fiduciary duties and failed to conduct adequate oversight of the Company's operations in China by permitting Defendant Zhu and Y. Wang to loot the Company's assets through: 1) transferring $53 million of Lihua's accounts receivable to an entity owned by Zhu, $33 million of which were owed to Lihua by Zhu and Y. Wang; 2) transferring  assets that belonged to Lihua to the PRC government; 3) misappropriating $56 million in assets belonging to Lihua for the benefit of a company related to Zhu; 4) causing the Company to pay $2 million in penalties to the Yingkou Public Security Bureau as a result of Y. Wang's issuance of false VAT[9] invoices; and 5) causing the Company to take out a loan in the amount of $8 million from the Nanjing Branch of the Chinese bank Everbright Co. Ltd. and subsequently defaulting on the loan. Subsequent to the looting by Defendants Zhu and Y. Wang, instead of taking actions to recover the foregoing losses, the TAC alleges that the Individual Defendants further breached their fiduciary duties and committed waste by 1) allowing Zhu to

---

[9] VAT, or value added tax, is a sales tax paid by businesses on the difference between what the seller paid for raw materials, and the price the seller received for a finished product.

transfer his 44% stock interest and thus giving control of the Company, in terms of both ownership and control, to the PRC -- which received Zhu's 44% Company stock interest that could have been used to satisfy Zhu's debt to the Company, and which received from Zhu other assets that belonged to the Company, without obtaining shareholder approval; 2)  appointing T. Wang and Zhang as directors and T. Wang as CEO (two executive officers of the PRC companies that now own the 44% stock interest in Lihua), and then resigning from their directorships, thus leaving T. Wang and Zhang as the only two directors on the Board and giving the PRC 100% control of Lihua; and 3) leaving Zhu to remain in control of Lihua's two PRC operating subsidiaries as their legal representative (which meant that Zhu can legally bind the subsidiaries on any contract or obligation); 4) failing to hold an annual meeting of stockholders no later than November 20, 2014, by which date an election of the Directors was required to be held, and failing to notify stockholders of the annual meeting -- in order to avoid letting stockholders elect the Company's Directors; and 5) causing the Company to fail to disclose, accurately and/or timely, the foregoing.

### B.    **Procedural History**

#### i.    **The Shareholder Derivative Action**

On May 16, 2014, Plaintiff Arshanapally, on behalf of nominal defendant Lihua, filed a verified shareholder derivative complaint against Defendants Huang, Lau, Serbin, Y. Wang and Zhu in the Court (the "*Arshanapally* Action"), alleging breach of fiduciary duties, gross mismanagement, abuse of control, and unjust enrichment.

On July 10, 2014, Lihua and the Individual Settling Defendants filed a motion to dismiss the *Arshanapally* Action.  On July 29, 2014, the Court granted Plaintiff Arshanapally's application to file an amended complaint fourteen days after the lead plaintiffs in the Securities Class Action file a consolidated complaint.

On August 15, 2014, Plaintiff Peck, on behalf of nominal defendant Lihua, filed a verified shareholder derivative complaint against Defendants Bruce, Huang, Lau, Serbin, T. Wang, Y. Wang, Zhang and Zhu in the Court (the "*Peck* Action") alleging breach of fiduciary duties, gross mismanagement, abuse of control, and unjust enrichment, aiding and abetting fiduciary duties, and a violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act").  On October 29, 2014, the Court issued an order granting Plaintiffs' motion, thus forming the Shareholder Derivative Action.

On October 31, 2014, Plaintiffs filed a Verified Consolidated Amended Shareholder Derivative Complaint ("CAC").  The complaint asserted claims against the named current and former members of Lihua's Board of Directors and executive officers, and sought to remedy the Defendants' alleged violations of federal and state law, including allegations of issuing materially false and misleading proxy statements in violation of Section 14(a) of the Exchange Act, breaches of fiduciary duty, waste of corporate assets, unjust enrichment, aiding and abetting fiduciary violations, and gross mismanagement.

On January 20, 2015, Lihua and the Individual Settling Defendants filed a Motion to Dismiss the CAC. On March 4, 2015, Plaintiffs filed a Verified Consolidated Second Amended Shareholder Derivative Complaint (the "SAC"), adding claims of failure to hold an annual stockholders meeting and breach of contract.  On April 22, 2015, Lihua and the Individual Settling Defendants filed a Motion to Dismiss the SAC, which Plaintiffs opposed.

On March 9, 2016, the parties held argument on the Motion to Dismiss. The Court ruled from the bench, granting the motion in part and dismissing certain claims, and denying it in part. The Court found that plaintiffs had adequately pled demand futility and sustained claims against

the Individual Defendants for breach of fiduciary duty, corporate waste, aiding and abetting, and gross mismanagement.

On April 11, 2016, Defendant Huang filed a motion seeking clarification, which Plaintiffs opposed, as to how the Court's ruling on the Motion to Dismiss related to her, and seeking dismissal of claims against her. Following oral argument on April 22, 2016, the Court ruled from the bench that the Motion to Dismiss was granted in part and denied in part with regard to Defendant Huang to the same extent as the other defendants who were Lihua's directors.

On May 6, 2016, both Lihua and the Individual Settling Defendants filed Answers to the SAC. The Settling Parties then proceeded into discovery, which was ongoing until the date of the Settling Parties' settlement agreement in principle, January 27, 2017. In the course of discovery, Lihua and the Individual Settling Defendants produced extensive documents to Plaintiffs.

On September 7, 2016, the Court granted Plaintiffs' unopposed Motion to Substitute Plaintiff Morrison for Plaintiff Peck.

On October 3, 2016, Plaintiffs filed the TAC. On October 20, 2016, both Lihua and the Individual Settling Defendants filed Answers to the TAC.

### ii.    The Related Securities Class Action

On May 1, 2014, Plaintiff Ashish Anand filed a federal securities class action complaint in the United States District Court for the Central District of California against defendants Lihua, Zhu and Huang on behalf of purchasers of Lihua stock from August 9, 2012 through April 30, 2014 (the "*Anand* Action"). On May 7, 2014, Plaintiff Jeffrey Grodko filed a federal securities class action complaint in the United States District Court for the Central District of California against defendants Lihua, Zhu and Huang on behalf of purchasers of Lihua stock from August 9, 2012 through April 30, 2014 (the "*Grodko* Action"). On July 3, 2014, the *Anand* Action and the

*Grodko* Action were transferred to the United States District Court for the Southern District of New York.  On August 11, 2014, the Court issued an order consolidating those actions (the "Securities Class Action").

On October 23, 2014, the class plaintiffs filed a Corrected First Amended Class Action Complaint against defendants Bruce, Huang, Lau, Serbin, Y. Wang and Zhu.[10]  Defendants Bruce, Huang, Lau and Serbin moved to dismiss the Corrected First Amended Class Action Complaint on December 16, 2014.  On February 6, 2015, class plaintiffs filed a Corrected Second Amended Class Action Complaint.  On March 6, 2015, the same defendants moved to dismiss the Corrected Second Amended Class Action Complaint.  On March 31, 2016, the Court ruled on the motion and dismissed the claims against Bruce, Huang, Lau, and Serbin, while sustaining the claims against Lihua, the only remaining served defendant.  On May 13, 2016, Lihua filed an answer to the Corrected Second Amended Class Action Complaint.  Class plaintiffs and Lihua then proceeded into discovery, which was ongoing until the date of the settlement agreement in principle, January 27, 2017.

### C.    Mediation Efforts and Settlement Negotiations

Shortly after the Court's rulings on the Motions to Dismiss in the Shareholder Derivative Action and the Securities Class Action, the Settling Parties agreed to participate in a global, in-person mediation before the two highly experienced Mediators, on August 9, 2016.  Prior to the mediation, the Settling Parties submitted mediation briefs and supporting documents in order to inform the Mediators of the factual and legal issues in the respective actions, and to advocate for their positions.  On the day of the mediation, the Settling Parties engaged with each other and the

---

[10] Like in the Shareholder Derivative Action, defendants Y. Wang and Zhu have not been served in the Securities Class Action.

Mediators for several hours, and they made progress toward a settlement.  In the following months, the Mediators continued communications with and amongst the Settling Parties, and the Mediators made multiple mediators' proposals to resolve the Shareholder Derivative Action and the Securities Class Action.  On January 26, 2017, the Mediators made the final mediators' proposal, to which the Settling Parties in both the Shareholder Derivative Action and the Securities Class Action agreed. Stipulation, ¶ I.C.

After reaching agreement on the substantive terms of the Settlement, with the Mediators' substantial assistance, the Settling Parties negotiated at arm's length the attorneys' fees and reimbursement of expenses to be paid to Plaintiffs' Counsel in light of the substantial benefits that have been or will be conferred upon Lihua's shareholders as a result of the settlement of the Shareholder Derivative Action. Stipulation, ¶ IV.D.1. Following extensive discussions, the Settling Parties agreed to the Mediators' proposal with respect to the fees and reimbursement of expenses to be paid to Plaintiffs' Counsel, subject to the approval of the Court.

### III.    THE TERMS OF THE PROPOSED SETTLEMENT

After extensive negotiations over the course of almost six months, and with the assistance of the Mediators, the Settling Parties have agreed to a Settlement that confers substantial benefit upon Lihua's shareholders in the form of monetary relief. Pursuant to the Stipulation, Lihua's insurers, on behalf of the Individual Settling Defendants, shall, within the latter of fifteen calendar days after Preliminary Approval of the Shareholder Derivative Action Settlement, or fifteen calendar days after preliminary approval of the Securities Class Action Settlement, pay $1,200,000 into escrow for the benefit of Lihua's shareholders, in order to settle the Securities Class Action ("Settlement Payment"). Stipulation, ¶ IV.B.1.

The Settling Parties acknowledge and agree that the settlement of the Securities Class Action, and thus the settlement of the Shareholder Derivative Action -- given the fact that the latter

settlement enabled the settlement of the Securities Class Action, confer substantial benefits upon Lihua's shareholders. Stipulation, ¶ IV.B.2. As the Company's insurers will pay $1,200,000 for the settlement of the Securities Class Action, 1) the Company does not have to exhaust its own funds to resolved the Securities Class Action, and 2) the Company's shareholders will be directly benefited by receiving the Settlement Payment.

Plaintiffs respectfully submit that the Settlement is an excellent resolution in light of the overall circumstances.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Legal Standards for Preliminary Approval of the Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Indeed, the [s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notably difficult and unpredictable." *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).

Under Federal Rule of Civil Procedure 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action."  Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22.110, at 476 (4th ed. 2002).

The procedure for the Court's review of a derivative settlement is well-established. Preliminary approval is the first of two stages that comprise the approval procedure for settlements

of derivative actions. The Court first reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the Court would then consider the final approval of the settlement in a settlement hearing, after notice of settlement is provided to stockholders. *See Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004).

Preliminary approval does not require the Court to answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate. *Id.* Rather, that determination is made only after notice of the settlement has been given to shareholders and after they have been given the opportunity to comment on the settlement. *See* 5 James Wm. Moore*, Moore's Federal Practice* 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002). In determining whether preliminary approval is warranted, the central issue before the Court is only whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the proposed Settlement should be given to stockholders and a hearing should be scheduled to consider final approval of the Settlement. *See Manual for Complex Litigation* (4th ed.) §21.632, at 321. Indeed, the granting of permission to send out a notice of settlement and hearing thereon "is not tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and to hold a full-scale hearing on the fairness." *In re Traffic Executive Ass'n E.R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).

Plaintiffs submit that this Court can make such a determination of "probable cause" because the Settlement was negotiated in good faith and at arm's-length among experienced counsel and resulted in substantial benefits for the shareholders of nominal defendant Lihua. Furthermore, given the complexities of the Shareholder Derivative Action and the uncertainties inherent in shareholder litigation, the proposed Settlement eliminates the risk that Lihua's

11

shareholders might not otherwise recover anything. Settlement at this stage in the litigation will also limit the expense of risky, unnecessary, and prolonged litigation, which is in the best interests of Lihua's shareholders and all Settling Parties. These reasons are more than sufficient to support Plaintiffs' assertion that the Settlement is "within the range of possible approval" and should be preliminarily approved, as set forth below.

### B.    The Settlement Is Fair, Reasonable, and Adequate

#### i.    The Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations

A "strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel.  *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003).  This presumption applies here because the Settlement was negotiated between experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses in the Shareholder Derivative Action, is the product of significant give and take by the Settling Parties, and was reached only after significant and active involvement by the Mediators, both of whom are experienced and highly regarded. Stipulation, ¶ I.C, II, III. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009); *see also City of Providence v. Aéropostale, Inc.,* 2014 U.S. Dist. LEXIS 64517, at *11 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations and, ultimately, with the assistance of Judge Daniel Weinstein, one of the nation's premier mediators in complex, multi-party, high stakes litigation, and one in whom this court reposes considerable confidence as a result of past experience."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Furthermore, the Second Circuit has noted that a

12

"mediator's involvement in … settlement negotiations helps ensure that the proceedings [are] free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Each of the Settling Parties here was represented by zealous and able counsel who negotiated the terms of the Settlement aggressively, in good faith, and at arm's-length. Stipulation, ¶ IV.D.1, H.3. The Settling Parties engaged in settlement discussions after they diligently evaluated the risks of continued litigation and had sufficient information to support their decision regarding the fairness, adequacy, and reasonableness of the Settlement. Stipulation, ¶ II, III.

Indeed, Plaintiffs' Counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Shareholder Derivative Action. Plaintiffs' Counsel has, among other things: (1) inspected, analyzed, and reviewed Lihua's public filings with the U.S. Securities and Exchange Commission, press releases, announcements, transcripts of investor conference calls, securities analysts' reports, advisories, media reports, and news articles; (2) researched the applicable law with respect to the claims asserted in the Shareholder Derivative Action and the potential defenses thereto; (3) conducted comprehensive damages analyses; (4) drafted and filed the various complaints and amended complaints in the Shareholder Derivative Action; (5) reviewed and analyzed the relevant pleadings in the Securities Class Action; (6) did extensive research in connection to, and drafted briefs in opposition to motions to dismiss and for clarification and a brief objecting to a request for judicial notice; (7) researched corporate governance issues and best practices, in particular issues relating to companies listed on U.S. stock exchanges whose primary operations are located in China, and compared such to Lihua's governance structures and policies; (8) prepared mediation briefs; (9) propounded and obtained extensive discovery materials from Lihua and the Individual Settling Defendants, and reviewed the discovery materials as they relate to the claims asserted in the Shareholder Derivative Action;

and (10) participated in extensive settlement discussions with the Mediators and Lihua's and the Individual Settling Defendants' Counsel.  Plaintiffs' Counsel thus have carefully evaluated the merits of this case.  Stipulation, ¶ II.

Plaintiffs' Counsel's through investigation not only aided them in successfully defeating Lihua's and the Individual Settling Defendants' Motion to Dismiss, but also bolstered their "assessment of the strengths and weaknesses of their positions and informed their negotiation strategies." *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *3 (S.D.N.Y Sep. 6, 2006).  These facts support preliminary approval of the Settlement because "the litigation had progressed to a stage where the court and counsel could evaluate the merits of the case and the probable course of future litigation."  *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).

The ensuing settlement negotiations included an in-person mediation session, presided over by the Mediators on August 9, 2016.  The Settling Parties and the Mediators afterward exchanged numerous communications and considered various settlement proposals. Stipulation, ¶ I.C. Only after reaching an agreement in principle on the substantive terms of the settlement did the Settling Parties engage in further arm's-length negotiations with respect to the Fee and Expense Amount to be awarded to the Plaintiffs' Counsel, with the Mediators' substantial assistance. Stipulation, ¶ IV.D.1.

These facts demonstrate that the settlement negotiations were conducted at arm's-length, in good faith, and free of collusion. "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)).

14

Thus, the proposed Settlement is presumed fair and warrants preliminary approval. *See*, *e.g.*, *Chi Kong Leung v. Home Boy Rest.,* 2009 U.S. Dist. LEXIS 12556, at *2 (S.D.N.Y. Feb. 18, 2009).

> **ii.** **The Settlement Appropriately Balances the Substantial Benefits Secured for the Company's Shareholders Against the Risks, Costs, and Delays of Continued Litigation**

Plaintiffs respectfully submit that the Settlement achieved in the Shareholder Derivative Action is an excellent result.

While Plaintiffs and their counsel believe that the claims alleged in the Shareholder Derivative Action are meritorious, and their investigation supports such belief, continued litigation would be extremely complex, costly, and of substantial duration. Stipulation, ¶ II. Indeed, significant costs and risks would remain for Plaintiffs to improve the result through further litigation, including proving damages and bad faith, obtaining a favorable judgment at trial, maintaining that judgment through post-trial motions, and collecting any judgment obtained. Plaintiffs would have to overcome these hurdles in the context of a shareholder derivative action, which is "notably difficult and unpredictable." *Zerkle*, 52 F.R.D. at 159.  Indeed, "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378, n. 4 (9th Cir. 1995).

Furthermore, should the litigation continue, Plaintiffs will have to face additional risks associated with Lihua's and the Individual Settling Defendants' limited insurance, which was depleted by the ongoing cost of defending the Shareholder Derivative Action and Securities Class Action, and which may be limited by Lihua's insurers' partial disclaimers of applicable coverage. Stipulation, ¶ II.

The Settlement, however, eliminates these and other risks of continued litigation, including the very real risk of no recovery for Lihua, while ensuring that the Company's shareholders obtain immediate and substantial benefits. *See* Stipulation, ¶ II, III, IV.B.2. In connection with the

settlement of the Shareholder Derivative Action, $1.2 million will be provided by Lihua's insurers for the settlement of the related Securities Class Action, ensuring that the Company will not have to exhaust its own limited cash reserve. Significantly, the $1.2 million monetary benefits will go directly to the Company's shareholders, and will allow Lihua to resolve the Securities Class Action promptly and efficiently.

Therefore, the Settling Parties and their counsel believe that the proposed Settlement before the Court represents a fair, reasonable, adequate, beneficial and practical resolution of a complex and costly litigation, and is in the best interest of Lihua's shareholders. *See* Stipulation, ¶ II, III, IV.B.2. Indeed, other courts have approved settlements comprising a financial payment to the company that is a defendant in a related securities class action and in which the money is used to settle the class action. *See Cook v. McCullough*, No. 11 C 9119, slip op. (N.D. Ill. Nov. 6, 2013) (approving derivative settlement and granting $5 million attorneys' fees award where the settlement contained a $20 million monetary payment from the company's insurers, half of which was to be used to fund the settlement or resolution of a related securities class action);[11] *In re Lumber Liquidators Holdings*, No. 4:13-cv-00157, slip op., ¶5 (E.D. Va. November 26, 2013) (approving derivative settlement and granting $5 million fee award where the settlement provides for an insurer payment of $26 million for the resolution of a related securities class action);[12] *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 82693 (D. Or. June 24, 2016) (approving derivative settlement and awarding $4.5 million attorneys' fees where the settlement provides for a $15 million payment from the company's insurers to an escrow account established for the settlement of a related securities class action).

---

[11] *See* Brown Decl. at ¶5, Ex. 3 at p.1; *see also* Brown Decl. at ¶4, Ex. 2 at ¶VI.2.2.
[12] *See* Brown Decl. at ¶7, Ex. 5 at ¶5; *see also* Brown Decl. at ¶6, Ex. 4 at ¶V.2.1.

### V.  THE NOTICE TO LIHUA'S SHAREHOLDERS SATISFIES THE REQUIREMENTS OF F.R.C.P. RULE 23.1(C) AND DUE PROCESS

Rule 23.1(c) of the Federal Rules of Civil Procedure requires that the notice of a proposed shareholder derivative settlement be given to shareholders "in the manner that court orders."  Thus, the Court has discretion in determining the contents of the notice and the manner in which notice will be provided.  *See*, *e.g.*, *Arace v. Thompson,* 2011 U.S. Dist. LEXIS 93105, at *10 (S.D.N.Y. Aug. 17, 2011); *see also United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647, 654 (7th Cir. 1971).  Notice of settlement proceedings in a derivative action must meet the due process requirements of *Mullane v. Central Hanover Bank & Trust Co.* that notice be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).

Here, the Stipulation and proposed Preliminary Approval Order contemplate that, within ten (10) calendar days after entry of the Preliminary Approval Order, the Notice and the Summary Notice shall be provided to Current Lihua Shareholders as follows:

(i)      Lihua shall issue a press release announcing the Settlement, including instructions to Current Lihua Shareholders on how to access the Notice and Stipulation, and referring Current Lihua Shareholders to the respective websites of Faruqi & Faruqi, LLP and The Brown Law Firm, P.C. for more information;

(ii)     Faruqi & Faruqi, LLP and The Brown Law Firm, P.C. shall post a copy of the Notice and the Stipulation on their respective firm websites; and

(iii)    Lihua and the Individual Settling Defendants shall cause the Summary Notice to be published once in the *Investor's Business Daily*.

Stipulation, ¶ IV.C.

The Settling Parties believe that this comprehensive method of disseminating notice to Lihua's Shareholders is adequate, reasonable, and satisfies both Federal Rule of Civil Procedure 23.1(c) and constitutional due process standards.  Indeed, the Settling Parties' proposed method of notice has been routinely approved by courts as reasonable and sufficient to satisfy due process.[13]

Additionally, the Notice is drafted in plain and easily understood language and clearly describes: (i) the nature of the Shareholder Derivative Action and the claims alleged therein; (ii) the terms of the proposed Settlement (including the amount of the requested Fee and Expense Amount to be sought by Plaintiffs' Counsel in connection with final approval of the Settlement and Service Awards to be sought by Plaintiffs); (iii) the considerations that caused the Settling Parties to conclude that the Settlement is fair, reasonable, adequate, and in Lihua's shareholders' best interests; (iv) the procedures for objecting to the Settlement; and (v) the date, time, and place of the Settlement Hearing.  *See* Stipulation, Ex. B.   In addition, the Notice invites Lihua Shareholders who seek additional information to inspect the Stipulation.  As a result, the Notice is more than reasonably "calculated to apprise the parties of the terms of the proposed settlement and the options available in connection with the judicial proceeding." *In re Drexel Burnham Lambert*

---

[13] Courts have routinely approved the form of notice that is comprised of a combination of a press release, publication in the *Investor's Business Daily*, and website postings. *See*, *e.g.*, *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02 CIV. 1862, 2004 WL 596109, at *3 (S.D.N.Y. Mar. 30, 2004) (approving settlement where notice was given by publication in national financial newspapers and on the company's web page); *In re PMC-Sierra, Inc. Deriv. Litig.*, No. 06 Civ. 05330 (RS), 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (providing for notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website); *Arace*, 2011 U.S. Dist. LEXIS 93105, at *11 (S.D.N.Y. Aug. 17, 2011) ("a nationally-circulated business-oriented publication catering to investors" such as *Investor's Business Daily* – "sufficiently apprise[s] … shareholders of the nature of the proposed settlement, the upcoming public hearing on the matter, and the opportunity to object"); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 149 (D.N.J. 2004) (approving settlement of class action in which access to the stipulation was made available by website).

*Grp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993).  The Court should therefore approve the proposed method and form of notice to Lihua Shareholders.

**VI.**      **PROPOSED SCHEDULE OF EVENTS**

In connection with preliminary approval of the Settlement and the provisions of the Stipulation, the Settling Parties request that the Court establish the date by which: (i) the Notice and the Summary Notice will be disseminated to Lihua Shareholders; (ii) Lihua Shareholders may object to the Settlement; and (iii) the final Settlement Hearing shall occur.  The proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation, would implement the following dates agreed to by the Settling Parties:

| Event | Date |
|---|---|
| Lihua's deadline for issuing a press release announcing the Settlement, including instructions on how to access the Notice and Stipulation, and referring Current Lihua Shareholders to the websites of Plaintiffs' Counsel | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Lihua's deadline for publishing the Summary Notice in the *Investor's Business Daily* | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| The Brown Law Firm, P.C.'s and Faruqi & Faruqi, LLP's deadline for posting a copy of the Notice and Stipulation on their respective firm websites | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for the Settling Parties to file papers with the Court in support of the Settlement and requested Fee and Expense Amount | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Deadline for Current Lihua Stockholders to file objections to the Settlement and/or requested Fee and Expense Amount with the Court, if any | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for the Settling Parties to file papers with the Court in response to Current Lihua Stockholders' objections, if any | At least seven (7) days prior to the Settlement Hearing |

| Event | Date |
|---|---|
| Settlement Hearing date | At least fifty-five (55) days after the entry of the Preliminary Approval Order |

## VII.  **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court: (i) preliminarily approve the Settlement; (ii) approve the form and manner of the Notice and Summary Notice; and (iii) schedule a date for the Settlement Hearing to consider final approval of the Settlement and the requested Fee and Expense Amount.

Dated: March 22, 2017

Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

By:  ___s/Timothy W. Brown_____
Timothy W. Brown (TB-1008)
240 Townsend Square
Oyster Bay, New York 11771
Tel: (516) 922-5427
Fax: (516) 344-6204

**FARUQI & FARUQI, LLP**
Nadeem Faruqi (NF-1184)
Nina M. Varindani (NV-1090)
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax:  212-983-9331

**FARUQI & FARUQI, LLP**
By:  ___s/Stuart J. Guber_____
Stuart J. Guber (admitted *pro hac vice*)
Timothy J. Peter
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: 215-277-5770
Fax:  215-277-5771

*Co-Lead Counsel for Plaintiffs*

20